UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 3:15-CV-463 JD |
| CONCORD COMMUNITY SCHOOLS, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is again before the Court on the parties' cross-motions for summary judgment. The Plaintiffs contend that a living nativity scene that Concord High School has long presented as the finale to its annual Christmas Spectacular violates the Establishment Clause. After the Plaintiffs filed this suit, the School proposed some changes for its upcoming shows in December 2015, but the Court found that even with those changes, the proposed show was still likely to violate the Establishment Clause, so the Court entered a preliminary injunction against performing a live nativity scene as part of the 2015 Christmas Spectacular. The School complied with that injunction, and the Court previously found that the show the School actually presented in 2015 did not violate the Establishment Clause. What remains of this case is the Plaintiffs' challenge to the version of the Christmas Spectacular that the School performed in 2014, and to the modified version of the show that the School proposed to present in 2015, prior to the issuance of the injunction. For the reasons that follow, the Court finds that the Plaintiffs' challenge to those shows is not moot; finds that those two versions of the Christmas Spectacular violated the Establishment Clause; and awards the Plaintiffs nominal damages and a declaratory judgment.

## I. FACTUAL BACKGROUND

In its previous orders, the Court has described at length each of the versions of the Christmas Spectacular at issue in this case. *Freedom From Religion Found. v. Concord Cmty. Schs.*, No. 3:15-cv-463, 2016 WL 4798964 (N.D. Ind. Sept. 14, 2016); *Freedom From Religion Found. v. Concord Cmty. Schs.*, 148 F. Supp. 3d 727 (N.D. Ind. 2015). [DE 40 p. 2–6; DE 62 p. 2–8]. Those facts are undisputed, and the Court will not repeat them here. The parties have filed cross-motions for summary judgment. In its previous order on those motions, the Court held that the version of the Christmas Spectacular that the School actually presented in 2015 did not violate the Establishment Clause. The Court did not reach the merits of the Plaintiffs' challenge to the 2014 show or the proposed-2015 show, though, because the School asserted for the first time in its surreply that the Plaintiffs' challenge to those shows was moot. Specifically, the School argued that it had decided not to present those versions of the show again, so the Plaintiffs' requests for a declaratory judgment and a permanent injunction were mooted by its voluntary cessation of the challenged conduct. The School cited no evidence in support of its assertion, though, so the Court directed it to file a supplemental brief with any evidence and argument in support of its position on this issue. In that same order, the Court also directed the Plaintiffs to file a supplemental brief that identified and justified the specific injunction they sought. The parties have now submitted and responded to those respective supplements, so the motions for summary judgment are again ripe for ruling.

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

"genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III. DISCUSSION

The Plaintiffs assert that the Christmas Spectacular that the School presented in 2014, and the show that it intended to present in 2015 prior to the preliminary injunction, violated the Establishment Clause. In its present filings, the School does not defend either of these shows on the merits, but instead raises a threshold argument that the Plaintiffs' challenges to those shows are now moot. The Court addresses the mootness argument first. Finding that these claims are not moot, the Court then considers these claims on their merits and then decides what remedies are appropriate.

**A. Mootness**

The School argues that the Court lacks jurisdiction to resolve the Plaintiffs' challenges to the 2014 and proposed-2015 shows because those claims are now moot. It argues that it has

decided not to present those versions of the show in the future, so there is no longer a case or controversy that could justify awarding forward-looking relief (a declaratory judgment and a permanent injunction). The School does not suggest that it has enacted any formal policy or taken any official action that would preclude presenting those shows in the future. However, in its supplemental filing, it has submitted an affidavit by its superintendent, John Trout, in which he describes a decision the School has made not to present those versions of the show. Mr. Trout notes that following the 2015 shows, "the community, the School Board, administrators, teachers, parents, and students engaged in a variety of informal discussions regarding the program on a going forward basis." [DE 63-1 ¶ 5]. Mr. Trout describes these conversations as taking place "at the local park, over the water cooler, and across the fence," and he asserts that they "resulted in what appeared to be a consensus that the program [as actually presented in 2015] was a success and that the changes should be made permanent." *Id.*

Mr. Trout further states that, in late December 2015, he met with the school board to discuss their options relative to the litigation and the future of the Christmas Spectacular. At that time, a "consensus was reached that the changes should be made permanent and that the School would not return to performing the program as it had been done in 2014 and the years preceding that time." *Id.* ¶ 6. Mr. Trout states that, as a result of this decision, the School decided to make a Rule 68 offer of judgment, part of which included a proposed injunction against presenting a living nativity scene or having a faculty member recite the story of Jesus' birth as it appears in the Bible. However, the Plaintiffs did not accept the offer of judgment, so by its own terms, and pursuant to Rule 68, the offer was withdrawn. Mr. Trout states, though, that notwithstanding the withdrawal of this offer, the School "made the decision to permanently alter the program . . . and

4

to perform the program on an ongoing basis in a fashion largely similar to the program performed in 2015 . . . ." *Id.* ¶ 9.

The School argues that, in light of this decision not to present the 2014 and proposed-2015 versions of the show in the future, the Plaintiffs' challenges to those shows are now moot. Article III of the Constitution states that the power of the federal courts extends to "cases" and "controversies." U.S. Const. art. III, § 2. Thus, "[u]nder Article III, 'cases that do not involve actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction.'" *Wisc. Right to Life, Inc. v. Schober*, 366 F.3d 485, 490–91 (7th Cir. 2004) (quoting *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 929 (7th Cir. 2003)). Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.2 (1997). That description is imprecise, though, as there are some notable differences between the two. *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189–90 (2000) (noting that this description of mootness "is not comprehensive"). Unlike standing, on which a plaintiff bears the burden of proof, the burden of proving that a controversy is moot lies with the party asserting mootness, which is usually the defendant. *Laidlaw*, 528 U.S. at 190; *Schober*, 366 F.3d at 491. The Supreme Court has also acknowledged that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Laidlaw*, 528 U.S. at 190.

Generally speaking, "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Laidlaw*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1983)); *see also*

5

*Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 947 (7th Cir. 2006) ("It is true that the mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the conduct, lest dismissal of the suit leave the defendant free to resume the conduct the next day."). Only when "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" will a case become moot by voluntary cessation. *Laidlaw*, 528 U.S. at 189; *accord Doe ex rel. Doe v. Elmbrook Sch. Dist.* (*Elmbrook I*), 658 F.3d 710, 719 (7th Cir. 2011), *adopted in pertinent part but overruled on other grounds en banc*, 687 F.3d 840, 842–43 (7th Cir. 2012). The Supreme Court has described this burden of proof as "stringent," "heavy," and "formidable." *Laidlaw*, 528 U.S. at 189–90. When the defendants are public officials, though, courts "place greater stock in their acts of self-correction, so long as they appear genuine." *Schober*, 366 F.3d at 492.

To begin with, there is no dispute that the Plaintiffs' challenges to these shows were live and justiciable at the time they were filed. The School had presented roughly the same living nativity scene as the conclusion of the Christmas Spectacular for the last forty-five years. Prior to filing suit, the Freedom From Religion Foundation also sent a letter to the School, objecting that the show violated the Establishment Clause, and the School responded with a defiant statement that refused to accede to the Plaintiffs' demands. Thus, at the time the Plaintiffs filed suit, a controversy existed that gave the Plaintiffs standing to assert their challenge to the show that was presented in 2014 and likely would have been presented into the future if not for this litigation.

The challenge to the proposed-2015 show was also live when it was filed. The show that the School actually presented in 2015 differed from the version it proposed, but only because the Court entered a preliminary injunction that compelled the School to make those changes. The School's music director also said prior to the preliminary injunction that he intended for these

changes to be permanent. In light of that, and because the School changed that show only because it was ordered by the Court to do so, a live controversy existed as to the legality of the proposed-2015 show at the time the Plaintiffs filed their amended complaint shortly thereafter, as there was a sufficient likelihood that the School would present that version of the show in the future if permitted to do so.

Thus, the question is whether, in light of subsequent events, those controversies are no longer live—whether the School has met its "stringent" and "formidable" burden of showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189. Generally, when evaluating whether a defendant's voluntary conduct moots a case, courts look at what actions the defendant took to ensure that the challenged practice would not recur, and also consider the reasons the defendant offers for taking those actions. First, as to a defendant's actions, the clearest case for mootness comes when a defendant formally rescinds a challenged ordinance or policy or enacts a new ordinance or policy that cures the alleged defect. *E.g.*, *Wernsing v. Thompson*, 423 F.3d 732, 744–45 (7th Cir. 2005); *Fed'n of Advert. Indus. Representatives*, 326 F.3d at 930 (noting the general rule "that repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief"); *see Elmbrook I*, 658 F.3d at 720 ("[W]e have accepted the repeal of a challenged ordinance or an express disavowal of official policy as sufficient to moot a case . . . ."). Less conclusive measures can suffice, too, though. For example, in *Schober*, the state never repealed the statute at issue, but it took a number of actions that, in combination, clearly established that it would not enforce the statute. Prior to the suit, the state had openly conceded that the statute was unconstitutional, and in another proceeding, it declined to appeal from a district court's order that held the statute was void in its entirety. After

7

the suit was filed, the state also sent a letter to the plaintiff assuring them that it would not enforce the statute, and it posted a public disclaimer on its website indicating that it would not enforce the statute. Also, the state had never enforced the statute against anyone. The Seventh Circuit thus held that there was "no real prospect that the [state] will ever enforce this statute," so it found the case to be moot.

Here, the School does not suggest that it has enacted any formal policy or resolution that would preclude the versions of the show in question. It has offered only an affidavit from its superintendent that a consensus was reached that the changes should be made permanent, and that the School has decided to permanently remove the objected-to aspects of the shows. The School does not indicate that it has documented this decision in any manner, or that it has taken any steps to implement this decision. The minutes of the school board meetings during the period this decision occurred do not reflect any discussion or announcement on this topic, either. In fact, there is no indication that the School has ever expressed this commitment except in its filings in this litigation, through Mr. Trout's affidavit. Granted, those filings are public records, but Mr. Trout's affidavit was not filed until nearly a year after the decision was made, and the School's failure to take action outside the confines of this litigation undermines its argument that this conduct cannot reasonably be expected to recur even if this case was dismissed. The School also tries to portray its Rule 68 offer of judgment as communicating its commitment not to present these shows in the future, as it offered to agree to an injunction against these versions of the shows. However, an offer of judgment is no such commitment; it is a litigation tactic that, by its own terms, is withdrawn if not accepted.

The School has not identified any case where an informal assurance of this sort supported a finding of mootness by voluntary cessation. The School cites to *Freedom From Religion*

*Found., Inc. v. Franklin Cty., Ind.*, 133 F. Supp. 3d 1154, 1159 (S.D. Ind. 2015), but there the county formally enacted an ordinance that cured the plaintiffs' concerns. The School also cites to *Schober*, where the agency's actions were less formal than in *Franklin County*, but those actions still went far beyond the circumstances present here. As just discussed, the state in *Schober* sent a letter to the plaintiff clearly indicating that it would not enforce the statute, and it posted a disclaimer on its website clarifying that it was not attempting to enforce, adopt, or apply the statute. Thus, the state had made both "private and public assurances . . . that the statute will not be enforced in the future." 366 F.3d 485. Prior to the suit, it had also admitted that the statute was unconstitutional; it declined to appeal a judgment declaring the statute void in its entirety; and it had never enforced the statute in the first place. None of those factors are present here. Rather, the School's actions are more similar to *Boyd v. Adams*, 513 F.2d 83, 89 (7th Cir. 1975), where the defendant sent an internal memorandum instructing its employees to discontinue the challenged practice, or to *Elmbrook I*, 658 F.3d at 720, where the defendant discontinued its challenged practice and had no intent to resume it, but "presented no evidence of a formal or even an informal policy change" that would have prevented it from doing so. In both cases, the courts found that the claims were not moot.

Courts also consider the reasons a defendant provides for voluntarily modifying its conduct, as those reasons can provide insight into whether the defendant's voluntary actions are likely to endure. *Schober*, 366 F.3d at 491 ("We believe that the defendants' now public policy of non-enforcement of the statute and regulations, *particularly in view of the reasons therefor*, . . . moots any challenge to that requirement." (emphasis added) (internal quotation and alteration omitted)). For example, claims are likely to be moot when a governmental entity states that it will not enforce a statute or policy because it is admittedly unconstitutional, as government

9

actors are unlikely to engage in conduct that they have already admitted would be unlawful. *E.g.*, *Schober*, 366 F.3d at 492 ("[A] case is moot when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional, in spite of the failure of the legislature to remove the statute from the books."); *Ragsdale*, 841 F.2d at 1365–65.

Other objective rationales can also suffice. In *Federation of Advertising Industry Representatives*, the defendant did not admit that the policy in question was unconstitutional, but the court found that the case was moot where the defendant's voluntary cessation was supported by a cost-benefit analysis as to the likelihood of success in litigation, and its "desire to avoid substantial litigation costs by removing a potentially unconstitutional law from the books." 326 F.3d at 931. And in *EEOC v. Flambeau*, the Seventh Circuit credited the defendant's assertion of voluntary cessation where the defendant changed its policy after determining, based on two years of experience, that the costs of the challenged program outweighed its benefits. 846 F.3d 941, 949 (7th Cir. 2017). Absent a reason to believe the defendant would re-impose a policy it had already determined to be uneconomical, the Seventh Circuit held that the challenge to that policy was moot. *Id.* The court added, though, that a "decision supported by less evidence or less thought might more reasonably be expected to recur," and it emphasized that no evidence contradicted the cost-benefit analysis upon which the defendant based its decision. *Id.*

By contrast, in *Concentrated Phosphate*, the defendants offered only their "own statement that it would be uneconomical for them to engage in any further" challenged conduct. 393 U.S. at 203. The Supreme Court found that the case was not moot, as "[s]uch a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those" who seek to establish mootness by voluntary cessation. *Id.*; *see also Flambeau*, 846 F.3d at 949 (distinguishing *Concentrated Phosphate* on the additional basis that there was reason

to doubt the veracity of those defendants' economic claims). In addition, in *Elmbrook*, the court noted that the school began holding its ceremonies in a church in the first place because that was cheaper than its other options. Because that remained true even after the school ceased holding its ceremonies at the church, the court found that "it is not difficult to imagine that such a [cost] disparity would lead District schools back to the Church in the future," so the case was not moot. *Elmbrook I*, 658 F.3d at 720.

Here, the justification the School offers for its decision undermines rather than reinforces its case for mootness. Mr. Trout indicates that the decision was based on "what appeared to be a consensus" that was reached after "a variety of informal discussions" were held "at the local park, over the water cooler, and across the fence." [DE 63-1 ¶ 5]. That explanation is problematic in many respects. First, public opinion is inherently subject to change, and basing a decision on a perceived public consensus offers little assurance that the decision will not change in the future. *See Flambeau*, 846 F.3d at 949 (finding mootness where the "reasons for the [defendant's] change were not speculation or opinion"). Second, Mr. Trout offers no basis for his assertion that the informal discussions "resulted in what appeared to be a consensus" that the changes should be made permanent. Given his description of these discussions as occurring at the water cooler and across the fence, Mr. Trout appears to be speaking purely metaphorically, and the School offers no objective support for his broad assertion.

Third, the record offers reason to doubt the accuracy of this perceived consensus. In the individual plaintiffs' affidavits in support of their motions for leave to proceed anonymously, they describe a great deal of public opposition to any changes in the Christmas Spectacular. For example, Jack and John Doe explained in their affidavit:

> Elkhart is a very religious area, and countless members of the community have rallied around the portion of the Christmas Spectacular to which we have objected.

11

> Many of these persons have been extremely vocal in their support: during a meeting of the school board at which this issue was discussed, hundreds of persons attended in pre-printed t-shirts advocating in favor of the portion of the Christmas Spectacular to which we object; yard signs expressing support for the objectionable portion of the Christmas Spectacular have also been displayed throughout our community; and a petition in support of this portion of the event has been circulated.

[DE 4-1 ¶ 7]. Jack Doe further stated that he "is aware that the vast majority of the High School—including faculty members that oversee his classes and that are responsible for the Christmas Spectacular—feel very passionately about the Christmas Spectacular and about keeping the live Nativity Scene." *Id.* ¶ 16.[1] The affidavits submitted by the new plaintiffs following the 2015 show reflect a similar sentiment:

> [C]ountless members of the community have rallied around the portion of the Christmas Spectacular to which we have objected. Many of these persons have been extremely vocal in their support, and I have witnessed the vitriol that resulted from the initial filing of the complaint in this case as well as from subsequent steps in the litigation.

[DE 47-2 ¶ 6; 47-3 ¶ 6]. The Plaintiffs' supplemental brief also cites to a recent online opinion poll in the Goshen News, in which 68% of the voters voted to resume the previous version of the nativity scene. Of course, none of that is scientific, but neither is Mr. Trout's assertion that the water cooler conversations held throughout the community resulted in a consensus that the changes should be made permanent. This illustrates the subjective and transitory nature of public opinion, which undermines the School's assertion that these versions of the show cannot reasonably be expected to recur. *Compare Concentrated Phosphate*, 393 U.S. at 203 (finding that the case was not moot where the defendants offered only their "own statement that it would

---

[1] *See also* DE 4-1 ¶ 8, 10 ("Additionally, a Facebook 'group' called 'Save Concord's Christmas Spec's Nativity Scene has been created. . . . [N]early 6,400 persons have 'liked' that group, which is about four times as many persons as attend the High School altogether. . . . Hundreds of persons have used either the 'online comments' section of media reports or the 'comments' function in the aforementioned Facebook 'group' to aggressively express their opposition to our position.").

be uneconomical for them to engage in any further" challenged conduct), *with Flambeau*, 846 F.3d at 949–50 (finding that the case was moot where the defendant offered undisputed proof that the costs of the challenged policy exceeded its benefits).

On the whole, the Court cannot conclude that the School has met its "stringent" burden of showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189. As in *Elmbrook*, the likelihood that the School will present the challenged versions of the Christmas Spectacular in the future "certainly has decreased" since this litigation began, but not to the extent that the Court now lacks jurisdiction to decide these claims. The case for mootness here is marginally stronger than in *Elmbrook*, since the School has stated that it will not present the challenged shows in the future, whereas the school in *Elmbrook* said only that it had no intent to resume the challenged conduct. But like in *Elmbrook*, the School "has presented no evidence of a formal or even an informal policy change," and "[n]othing in official policy would prevent or even obstruct [the School] from changing its mind" and resuming the challenged versions of the show. *Elmbrook I*, 658 F.3d at 720. Nor have the individuals who have decided to make the change indicated how they would implement the decision, as they are not the ones who typically set the content of the shows. And like the cost incentive that could have caused the school in *Elmbrook* to resume its challenged conduct, public sentiment could do likewise as to the Christmas Spectacular if the School's decision was in fact informed by its perception of the public consensus, as it indicates.

It is also worth noting that the practice the Plaintiffs challenge is long-standing. The School had presented roughly the same version of the living nativity scene for the last forty-five years, so it should not be taken lightly that the School will be able to leave behind such a practice that has spanned generations and enjoyed a great deal of support within the community. Against

that tide of tradition, the School cannot carry its burden of establishing mootness by voluntary cessation with only an affidavit attesting to an informal and undocumented decision made by the superintendent and school board out of the public eye. Therefore, the Court finds that the Plaintiffs' challenges to these shows are not moot due to the School's voluntary cessation of the challenged conduct, so the Court retains jurisdiction to resolve the Plaintiffs' claims.[2]

**B.    Merits**

Because these claims are not moot, the Court turns to the merits. The Plaintiffs contend that the 2014 and proposed-2015 versions of the Christmas Spectacular violated the Establishment Clause, which states that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend I, cl. 1. The Fourteenth Amendment made this provision equally applicable to state and municipal governments, such as the School. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947); *Doe ex rel. Doe v. Elmbrook Sch. Dist.* (*Elmbrook II*), 687 F.3d 840, 849 (7th Cir. 2012) (en banc). Under *Lemon v. Kurtzman*, a governmental practice violates the Establishment Clause if it (1) lacks a legitimate secular purpose; (2) has the primary effect of advancing or inhibiting religion; or (3) fosters an excessive entanglement with religion. 403 U.S. 602, 612–13 (1971). The second of those elements has also been framed as asking "'whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval'" of religion or of a particular religious belief. *Books v. Elkhart Cty., Ind.*, 401 F.3d 857, 867 (7th Cir. 2005) (quoting *Freedom From Religion Found., Inc. v. City of Marshfield, Wisc.*, 203 F.3d 487, 493 (7th Cir. 2000)); *see*

---

[2] Given this finding, the Court need not reach the Plaintiffs' alternative argument that their request for nominal damages would present a justiciable controversy even if all of their other requests for relief were moot.

*also Elmbrook II*, 687 F.3d at 850 ("[W]e have viewed the endorsement test as a legitimate part of *Lemon's* second prong . . . .").

In granting a preliminary injunction as to the proposed-2015 show, the Court found that the Plaintiffs were likely to succeed on the merits of their claim that that show violated the Establishment Clause. Specifically, the Court held that "a reasonable observer would fairly believe that the portrayal of the living nativity scene, when viewed in the particular context, circumstances, and history of the Christmas Spectacular, conveys a message of endorsement of religion, or that a particular religious belief is favored or preferred." [DE 40 p. 19]. As the Court has previously emphasized, the portrayal of a living nativity scene in and of itself did not render the performance unconstitutional. But the manner in which the living nativity scene was presented and its context within the show combined to create an impermissible message of endorsement. Though the standard of review at this stage is different, no new evidence has been submitted, and the School's present filings offer no argument in defense of the constitutionality of this version of the show. Accordingly, for the reasons explained in the prior order, [DE 40 p. 9–19], the Court now finds that the proposed-2015 version of the Christmas Spectacular would have violated the Establishment Clause by conveying a message of endorsement.

The 2014 version of the Christmas Spectacular presents an even clearer case. Not only did this version of the show include the same extended living nativity scene as the proposed-2015 show, in which the nativity scene was emphasized unlike any other aspect of the show,[3] it included a narration consisting of Bible passages read by a faculty member, telling the story of

---

[3] As discussed in the Court's last order, this presentation differed substantially from the show that was actually presented in 2015, during which a nativity scene was on stage for less than two minutes of the 107-minute show, as the visual complement to a single song performed by a single ensemble, and included no student actors. [DE 62 p. 24–26].

Jesus' birth. It also lacked any context suggesting an educational or cultural purpose for this presentation, and instead focused solely on the Christmas holiday, and in particular, the religious content of that holiday. The message of endorsement conveyed by this version of the show was unmistakable. Indeed, at no point in this litigation has the School presented any argument in defense of this version of the show. Accordingly, the Court also finds that the 2014 version of the Christmas Spectacular violated the Establishment Clause by conveying a message of endorsement. Thus, the Court grants the Plaintiffs' motion for summary judgment as to the merits of these claims.

**C.      Remedies**

Finally, the Court must address what remedies are warranted given those findings. First, the Plaintiffs seek nominal damages for their exposure to the 2014 show. The School has not responded to this request or otherwise disputed the Plaintiffs' entitlement to nominal damages if this case is not moot.[4] Thus, the Court finds that the Plaintiffs are entitled to nominal damages in the amounts they request, which equal one dollar for each exposure to the 2014 show. Accordingly, the Court awards nominal damages in the amounts of $7.00 to Jack Doe; $1.00 to John Doe; $1.00 to John Roe; and $1.00 to the Freedom From Religion Foundation. Next, the Court also grants the Plaintiffs' request for declaratory judgment, having found that the 2014 and proposed-2015 versions of the Christmas Spectacular violated the Establishment Clause. The Court will therefore enter declaratory judgment that those versions of the show were unlawful.

Last, the Plaintiffs request that, in addition to a declaratory judgment, the Court enter a permanent injunction against presenting those versions of the show in the future. In contrast to

---

[4] The School argues in its supplemental briefs that a claim for nominal damages cannot on its own maintain a live controversy if the Plaintiffs' other requests for relief are all moot, but the School does not contest the Plaintiffs' request for nominal damages in the absence of mootness.

their extended arguments in support of their request for nominal damages, though, the Plaintiffs offer no argument for why a permanent injunction is warranted here. They simply assert that because these shows were unlawful, they are "entitled" to a permanent injunction against presenting these shows in the future. The Court raised this omission in its previous order, noting that a "permanent injunction does not inevitably follow from any finding that a right has been violated . . . ." [DE 62 p. 17 (citing *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007))]. That decision is committed to a district court's discretion, which is guided by a number of factors. *eBay*, 547 U.S. at 391 ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ."); *Badger Catholic*, 620 F.3d at 782 ("As for the choice between declaratory judgment and an injunction: that's a matter left to the district court's discretion . . . . A declaratory judgment cannot be enforced by contempt proceedings, but it has the same effect as an injunction in fixing the parties' legal entitlements."). The Court thus directed the Plaintiffs to submit a supplemental brief explaining why a permanent injunction is warranted under the present circumstances of this case.

In their supplemental filing, the Plaintiffs again fail to engage on this issue. They argue only that the case is not moot, so they are entitled to a permanent injunction. The Supreme Court has rejected that premise on multiple occasions, though, as the Court further noted in its previous order. [DE 62 p. 17 ("Even if any changes to the show do not result in these claims being moot, those changes may still affect whether a permanent injunction is an appropriate remedy.")]. In *Laidlaw*, for example, the Supreme Court noted that "although the defendant's voluntary cessation of the challenged practice does not moot the case, 'such abandonment is an important

17

factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice.'" 528 U.S. at 193 (quoting *City of Mesquite*, 455 U.S. at 289) (internal alteration omitted); *see also City of Mesquite*, 455 U.S. at 289 n.10 (stating that while the case was not moot by voluntary cessation, "'[o]f course it is still open to appellees to show, on remand, that the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary'" (quoting *Concentrated Phosphate*, 393 U.S. at 203–04)). By relying only on a categorical argument that they are entitled to a permanent injunction because the case is not moot, the Plaintiffs have failed to offer any argument for why, under the circumstances of this case as it now stands, the Court should exercise its discretion to enter a permanent injunction.

The Court finds that a permanent injunction is not warranted here, as a declaratory judgment affords the Plaintiffs the relief they seek, without needing to resort to an overbroad and likely unnecessary use of coercion through an injunction. Though the School has not met its stringent burden of establishing that its voluntary cessation of the challenged conduct deprives the Court of jurisdiction to resolve the Plaintiffs' claims, that factor certainly bears on whether an injunction is appropriate. The School's superintendent has stated under oath that the School will not present these versions of the Christmas Spectacular in the future, and the Court has no reason to doubt that statement's sincerity, even if it lacks the sort of certainty and justification that would give rise to mootness. It also appears that the School followed through with this commitment as to the 2016 shows, as the Plaintiffs did not seek an injunction as to those shows, and have not otherwise challenged them. In addition, should the School's position change in the future, a declaratory judgment gives the Plaintiffs the tools they need to address that situation. Under 28 U.S.C. § 2202, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose

18

rights have been determined by such judgment." Thus, if the School suggests in the future that it may present either of these versions of the show, the Plaintiffs can swiftly return to court and seek appropriate relief, which could include an injunction.

The permanent injunction the Plaintiffs seek is also overbroad, which further weighs against awarding an injunction under these circumstances. The Plaintiffs seek an injunction that bars the School "from organizing, rehearsing, presenting, or intentionally allowing to be presented, any portrayal of a nativity scene that is composed of live performers." [DE 65 p. 2–3]. The Court has not held in this case, though, that any portrayal of a living nativity scene violates the Establishment Clause. [DE 40 p. 12–14; DE 62 p. 22–23]. The Court has held only that these particular performances of the living nativity scenes, in light of all the pertinent context and circumstances of these particular shows, conveyed a message of endorsement and violated the Establishment Clause. A broader holding is not possible given the fact-intensive inquiry in Establishment Clause cases, and the injunction the Plaintiffs seek extends beyond the scope of that holding.[5] Conversely, tailoring a permanent injunction to all of the circumstances of these shows that made them unlawful, with enough specificity to apprise the School of what conduct is prohibited, *see* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction . . . must . . . state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."), would be unduly complicated.

If it were more likely that the School would present these versions of the show in the future, some sort of injunction might be warranted despite these obstacles. But as it stands, the

---

[5] The Plaintiffs take their proposed language from the preliminary injunction the Court issued as to the proposed-2015 show. However, that injunction applied only to the 2015 shows, and the School had suggested no alternative, so the Court found that any overbreadth was acceptable under the circumstances. [DE 40 p. 21–22]. The injunction the Plaintiffs now seek would extend into perpetuity, and thus deserves closer scrutiny.

Court need not choose between a permanent injunction that is simple but overbroad and one that is narrow but minutely detailed. The declaratory judgment itself establishes the parties' rights, and if the School acts in the future in ways that would be inconsistent with that judgment, the Court can grant further relief to protect and enforce the Plaintiffs' rights. *Badger Catholic*, 620 F.3d at 782 ("The problem with issuing an injunction straight off is that the details required by Fed. R. Civ. P. 65(d)(1)(C) would be considerably more elaborate than the terms of a declaratory judgment. . . . If [the plaintiff's] fears come to pass, then more relief lies in store. For now, however, a declaratory judgment suffices."). At this time, however, the Plaintiffs have not shown that a permanent injunction is warranted, so the Court denies that request.

### IV.  CONCLUSION

The Court GRANTS the Plaintiffs' motion for summary judgment [DE 52] in part, as to the 2014 and proposed-2015 shows, and DENIES the School's motion for summary judgment [DE 55] to the same extent. The Court AWARDS nominal damages to the plaintiffs in the amounts of $7.00 to Jack Doe; $1.00 to John Doe; $1.00 to John Roe; and $1.00 to the Freedom From Religion Foundation. The Court GRANTS the Plaintiffs' request for a declaratory judgment that the 2014 and proposed-2015 shows violated the Establishment Clause, but DENIES the Plaintiffs' request for a permanent injunction at this time. Because the Court previously granted summary judgment in favor of the School as to the show that was actually performed in 2015, [DE 62], all claims in this action have now been resolved, so the Clerk is DIRECTED to enter a final judgment in accordance with these orders.

SO ORDERED.

ENTERED:  March 6, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court